IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ANNA WEISSINGER, et al.,

   Plaintiffs,

   v.

PATRICK MURRAY, et al.,

   Defendants.

CIVIL ACTION FILE
NO. 1:06-CV-1544-TWT

ORDER

This is a 42 U.S.C. § 1983 action against two Cobb County police officers in their individual capacities. It is before the Court on the Plaintiffs' Motion for Partial Summary Judgment [Doc. 36], and the Defendants' Motion for Summary Judgment [Doc. 49]. For the reasons stated below, both motions are DENIED.

I. BACKGROUND

The Plaintiffs, Myron Dale Tidwell and Anna Weissinger, lived at 2962 Forest Chase Terrace, Marietta, Cobb County, Georgia. Jeremy Tidwell is Mr. Tidwell's adult son. He lived with the Plaintiffs for a time while he was separated from his wife. Jeremy was a Forsyth County deputy sheriff. Shortly after he moved in, however, Jeremy was asked to leave. For a variety of reasons, the Plaintiffs, especially Anna Weissinger, become concerned with Jeremy's erratic and disturbing behavior.

After Jeremy was asked to leave the house, the Plaintiffs continued to have disputes with Jeremy, which led them to take several security measures. They attempted to obtain a temporary protective order and complained about his behavior to the Forsyth County Sheriff's Department. Mr. Tidwell told Jeremy he was not allowed on the premises, and that any appearance by him on the property would be criminal trespassing.

When he left his father's house, Jeremy left some items of personal property including some Forsyth County Sheriff's Department uniform shirts. Knowing he was forbidden from entering the premises, Jeremy arranged for his wife to come pick up the items. Although Weissinger and Jeremy's wife had made arrangements for her to pick up the shirts, Jeremy decided that he would ignore Mr. Tidwell's wishes, and pick up the shirts himself. On March 21, 2006, a day when he knew that Mr. Tidwell would be out of town for work, Jeremy called the Cobb County Police and requested a "domestic standby." At a school near Mr. Tidwell's home, he met Officers Patrick Murray and Johnnie Tuggle.

Jeremy then went with the two officers to Mr. Tidwell's home. Jeremy parked his truck on the street as the officers went up to the house and knocked on the door. No one was at home. As the officers walked back to the street, Jeremy pulled his truck into the driveway. About this time, Weissinger returned home. She was

extremely upset and, according to her deposition, was terrified that Jeremy was on the property. She immediately told the officers that Jeremy was not supposed to be there, and asked the officers to remove Jeremy from her home.

Not only did the officers refuse to tell Jeremy to leave Weissinger's home, but they then threatened to arrest Weissinger for "theft by conversion" if she did not turn over the shirts. According to Weissinger, Murray verbally berated her and insisted that she turn over the shirts. Instead, she tried to call Mr. Tidwell to tell him that Jeremy was on the property. When she could not reach him, she then contacted her attorney Inez Grant. While she was making these phone calls, Murray continued threatening her with arrest unless she allowed Jeremy into her home in order to retrieve the shirts. After she repeatedly refused to allow Jeremy into the house, Officer Murray arrested Weissinger for theft by conversion.

The Plaintiffs contend that there was no probable cause – or even arguable probable cause – for the arrest. O.C.G.A. § 16-8-4(a) states that: "A person commits the offense of theft by conversion when, having lawfully obtained funds or other property of another . . . he knowingly converts the funds or other property to his use in violation of the agreement or legal obligation." There is evidence in the record that Jeremy had already informed Murray that Weissinger had no intention of keeping the property, let alone "converting" it for her own use. Weissinger had already made

plans to give the shirts to Jeremy's wife, and Murray was aware of this fact. (Murray Dep. at 13) ("Well, I was going to let him take the rock, being that he said that he was a deputy sheriff and that his girlfriend or wife was supposed to come over at a later date to come get his property and wasn't going to be able to get the rock in the car.").

It also appears that Murray was aware that Jeremy was not allowed on the property, and that he still authorized a criminal trespass on Mr. Tidwell's property. Though Murray denied being aware of this in his deposition, Jeremy Tidwell testified that he told the officers that he was not allowed the property. (Pls.' Resp. to the Defs.' Mot. for Summ. J., at 6) (quoting Jeremy Tidwell Dep. at 31) ("[S]o if they want to give me an official criminal trespass warning when I get there, I don't care, I just need my stuff."). Furthermore, Sergeant Robert W. Lee, the officer that conducted an investigation into the two officers' misconduct, testified that Murray knew that Jeremy was not allowed on the property. (Lee Dep. at 15.)

After she was handcuffed, Officer Murray continued yelling at Weissinger insisting that she was lying and demanding to know who she had been talking to. The officers then took Weissinger's phone and the keys to the house. One of the officers then entered Mr. Tidwell's home with Jeremy. The Defendants claim that she consented; she denies this. After this initial entry into the home, Tuggle and Jeremy emerged without the shirts. The officers then approached Weissinger who was at this

point sitting in the back of Murray's police car. They indicated that they were unable to find the shirts. Weissinger could see that Jeremy was removing property from the house such as a seed spreader. In order to prevent Jeremy from taking additional items, she said she would go in and get the shirts. (Weissinger Dep. at 142.) Still in handcuffs, she directed the officers to a box in the garage that contained Jeremy's shirts.

Weissinger was taken to Cobb County Jail where she was charged, not with theft by conversion, but with misdemeanor obstruction of an officer. The obstruction charge was dismissed by the Cobb County Solicitor. The Cobb County Police Department conducted an investigation and determined that Weissinger should never have been arrested, and recommended that the charges not only be dismissed, but that her arrest record be expunged. The investigation also found that the officers violated several department policies, and both were given suspensions.

## II. MOTION FOR SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59

(1970).  The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

### III.  DISCUSSION

The Defendants seek summary judgment on the Fourth Amendment claims that the Plaintiffs have asserted under 42 U.S.C. § 1983.  Section 1983 provides a cause of action for persons whose rights under the federal constitution have been violated under color of state law.  42 U.S.C. § 1983.  The statute confers no substantive rights itself.  Rather, it provides "a method of vindicating federal rights elsewhere conferred."  Graham v. Connor, 490 U.S. 386, 393-94 (1989).  To establish a section 1983 violation, the plaintiff must show (1) conduct committed by a person acting under color of state law (2) that deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States.  Parratt v. Taylor, 451 U.S. 527, 535 (1981).

The Fourth Amendment to the United States Constitution forbids unconstitutional searches and seizures.  "Of all the places that can be searched by the police, one's home is the most sacrosanct, and receives the greatest Fourth Amendment protection."  United States v. McGough, 412 F.3d 1232, 1236 (11th Cir.

2005) (citing Payton v. New York, 445 U.S. 573, 585 (1980)); see also United States v. United States District Court, 407 U.S. 297, 313 (1972) (noting that "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed"). It is a basic principle of Fourth Amendment law that "searches and seizures inside a home without a warrant are presumptively unreasonable." Payton, 445 U.S. at 586. "As Payton makes plain, police officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home." Bashir v. Rockdale County, 445 F.3d 1323, 1328 (2006).

Unless they had consent, the Defendants unquestionably violated the Plaintiffs' Fourth Amendment rights when they entered Mr. Tidwell's home without a valid warrant. Their entry does not fall under any of the exceptions to the rule against warrantless entries, unless one were to treat Jeremy's need for his shirts and the decorative rock as "exigent circumstances" which it was not. The Defendants claim that they had consent to enter the house; Ms. Weissinger denies it. There is the additional question of whether any consent to the second entry was "voluntarily" given after the Plaintiff was arrested and handcuffed. These are genuine issues of fact that must be resolved at trial.

There are also factual issues as to whether Ms. Weissinger was arrested without probable cause. "Plainly, an arrest without probable cause violates the right to be free

from an unreasonable search under the Fourth Amendment." Durruthy v. Pastor, 351 F.3d 1080, 1088 (11th Cir. 2003). Probable cause to arrest exists when it is objectively reasonable based on the totality of the circumstances. Id. The standard is met when facts within the officer's knowledge would lead a reasonable person to believe that the suspect is about to commit an offense. Id., see also United States v. Street, 472 F.3d 1298, 1305 (11th Cir. 2006) (stating that the standard is objective and not based solely upon the officer's subjective opinions).

    Ms. Weissinger was arrested for theft by conversion, but ultimately charged with obstruction. According to her testimony, there was probable cause for neither charge. As noted above, Officer Murray was informed by Jeremy that Weissinger had already made plans with Jeremy's wife to transfer the shirts. Thus, there was no basis for assuming that Weissinger intended to convert the shirts for her own use. Indeed, according to Murray, the reason he let Jeremy onto the property is because Weissinger had already agreed to transfer the shirts to Jeremy's wife. The officers were only dispatched as a "domestic standby." They were not investigating a crime, and had no reason to believe that Weissinger was acting illegally. Once Weissinger asked the officers to leave they were no longer acting as a domestic standby. "[T]hey were instead merely attempting forcibly to resolve a civil dispute." Thornton v. City of Macon, 132 F.3d 1395, 1399 (11th Cir. 1998). The fact that Weissinger could have

changed her mind and decided to keep the shirts would not even be arguable probable cause.  See, e.g., Williamson v. Mills, 65 F.3d 155, 158 (11th Cir. 1995) (noting that the mere fact that an item "could have been used for unlawful activity . . . is not enough to establish even arguable probable cause").  Indeed, the flimsy basis for the charge is why the Defendants were forced to charge her with "obstruction."

      The officers lacked probable cause to make the arrest for "obstruction."  A person is only guilty of obstruction where she "knowingly and wilfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties." O.C.G.A. § 16-10-24.  Weissinger was under no compulsion to retrieve Jeremy's shirts based upon Officer Murray's demands.  The officers were only dispatched as a "domestic standby."  Had they attempted to merely request that Weissinger transfer the property, or had they offered to retrieve the property after ensuring that Jeremy would remain off the premises, they would have been "lawfully discharging" their "official duties."  As the Eleventh Circuit noted in a case remarkably similar to this one, "He and the other officers could not force [Weissinger] to make such an exchange, however, and they could not remain on [her] property after [she] had refused to make the exchange."  Thornton, 132 F.3d at 1399 (denying qualified immunity for false arrest on "obstruction" charge where police attempted to forcibly resolve transfer of property from a residence).  A reasonable jury could find that the

arrest was unreasonable and violated the Fourth Amendment. Tuggle and Murray may nevertheless be shielded from liability for civil damages if they did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Hope, 536 U.S. at 739 (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities. McClish v. Nugent, 483 F.3d 1231, 1237 (11th Cir. 2007).

The Supreme Court has explained that the salient question for the purposes of determining whether a right was "clearly established" is whether the state of the law at the time of the violation gave the officials fair warning that their alleged treatment of the plaintiff was unconstitutional. Hope, 536 U.S. at 741. "While officials must have fair warning that their acts are unconstitutional, there need not be a case 'on all fours,' with materially identical facts, before we will allow suits against them." Holloman v. Harland, 370 F.3d 1252 (2004). "This circuit was recently chastised by the Supreme Court for taking an unwarrantedly narrow view of the circumstances in which public officials can be held responsible for their constitutional violations." Id. It is clearly established that an arrest made without probable cause violates the Fourth Amendment. See Thornton, 132 F.3d at 1399. But an officer is entitled to qualified immunity where the officer had "arguable probable cause." Id. Arguable probable

cause exists where reasonable officers in the same situation as the defendant, knowing what he knows, could have believed that probable cause existed. The facts underlying the Plaintiffs' claims and the Defendants' defense of qualified immunity must be determined by the trier of fact.

## IV.  CONCLUSION

The Plaintiffs' Motion for Partial Summary Judgment [Doc. 36] is DENIED. The Defendants' Motion for Summary Judgment [Doc. 49] is DENIED.

SO ORDERED, this 27 day of June, 2007.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge