IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ANNA WEISSINGER, et al.,

    Plaintiffs,

      v.

                                              CIVIL ACTION FILE
                                              NO. 1:06-CV-1544-TWT

PATRICK MURRAY, et al.,

    Defendants.

ORDER

This is a 42 U.S.C. § 1983 action against two Cobb County police officers in
their individual capacities. It is before the Court on the Plaintiffs' Motions for
Attorney Fees [Doc. 128, 138]. For the reasons set forth below, the motions are
GRANTED in a reduced amount.

I. Introduction

The Plaintiffs, Myron Dale Tidwell and Anna Weissinger, filed their Complaint
in this action on June 28, 2006, arising out of a March 2006 search of the Plaintiffs'
home and arrest of Ms. Weissinger. The case was tried to a jury, which reached a
verdict on August 20, 2008. The jury awarded Ms. Weissinger damages against
Defendant Patrick Murray in the amount of $20,000 and against Defendant Johnny
Tuggle in the amount of $5,000. The jury awarded Mr. Tidwell $3,000 against

Defendant Tuggle in compensatory damages.  The jury declined to award any punitive damages to the Plaintiffs.

The Plaintiffs lived together at 2962 Forest Chase Terrace, Marietta, Cobb County, Georgia.  Jeremy Tidwell is Mr. Tidwell's adult son.  In March 2006, he was a Forsyth County deputy sheriff.  He lived with the Plaintiffs for a time while he was separated from his wife.  Shortly after he moved in, however, Jeremy was asked to leave.  For a variety of reasons, the Plaintiffs, especially Anna Weissinger, become concerned with Jeremy's erratic and disturbing behavior. After Jeremy was asked to leave the house, the Plaintiffs continued to have problems with him.  They attempted to obtain a temporary protective order and complained about his behavior to the Forsyth County Sheriff's Department.  Mr. Tidwell told Jeremy he was not allowed on the premises, and that any appearance by him on the property would be trespassing.

Jeremy left some items of personal property at the house including some Forsyth County Sheriff's Department uniform shirts.  Knowing he was forbidden from entering the premises, Jeremy arranged for his wife to pick up the items.  Although Ms. Weissinger and Jeremy's wife had made arrangements for her to pick up the shirts, Jeremy decided that he would ignore Mr. Tidwell's wishes, and get the shirts himself.  On March 21, 2006, a day when he knew that Mr. Tidwell would be out of

town for work, Jeremy called the Cobb County Police and requested a "domestic standby." At a school near Mr. Tidwell's home, he met Officers Patrick Murray and Johnnie Tuggle.

Jeremy then went with the two officers to Mr. Tidwell's home. Jeremy parked his truck on the street as the officers went up to the house and knocked on the door. No one was at home. As the officers walked back to the street, Jeremy pulled his truck into the driveway. About this time, Ms. Weissinger returned home. Upon seeing Jeremy, she got extremely upset. She immediately told the officers that Jeremy was not supposed to be there, and asked the officers to remove Jeremy from her home.

Not only did the officers refuse to tell Jeremy to leave Ms. Weissinger's home, but they then threatened to arrest Ms. Weissinger for "theft by conversion" if she did not turn over the shirts. According to Ms. Weissinger, Murray verbally berated her and insisted that she turn over the shirts. Instead, she tried to call Mr. Tidwell to tell him that Jeremy was on the property. When she could not reach him, she then contacted her attorney Inez Grant. While she was making these phone calls, Murray continued threatening her with arrest unless she allowed Jeremy into her home in order to retrieve the shirts. After she repeatedly refused to allow Jeremy into the house, Officer Murray arrested Ms. Weissinger for theft by conversion. There was a lack of probable cause for this offence, since Jeremy had already informed Murray

that Ms. Weissinger had no intention of keeping the shirts, let alone "converting" them for her own use. Ms. Weissinger had already made plans to give the shirts to Jeremy's wife, and Murray was aware of this fact.

After she was handcuffed, Officer Murray continued yelling at Ms. Weissinger insisting that she was lying and demanding to know who she had been talking to. The officers then took Ms. Weissinger's phone and the keys to the house. One of the officers then entered Mr. Tidwell's home with Jeremy. The Defendants claimed that she consented; she denied this. After this initial entry into the home, Tuggle and Jeremy emerged without the shirts. The officers then approached Ms. Weissinger who was at this point sitting in the back of Murray's police car. They indicated that they were unable to find the shirts. Ms. Weissinger could see that Jeremy was removing property from the house such as a seed spreader. In order to prevent Jeremy from taking additional items, she said she would go in and get the shirts. Still in handcuffs, she directed the officers to a box in the garage that contained Jeremy's shirts.

Ms. Weissinger was taken to Cobb County Jail where she was charged with misdemeanor obstruction of an officer. The obstruction charge was later dismissed by the Cobb County Solicitor. The Cobb County Police Department conducted an investigation and determined that Ms. Weissinger should never have been arrested, and recommended that the charges not only be dismissed, but that her arrest record be

expunged. The investigation also found that the officers violated several department policies, and both were given suspensions.

The Plaintiffs filed suit in June 2006. After discovery, the Plaintiffs moved for partial summary judgment on the issue of liability. In April 2007, the Defendants filed their Motion for Summary Judgment. The Court denied both motions in June 2007. In July 2007, the Defendants filed an interlocutory appeal, and the Plaintiffs filed a cross appeal. In October 2007, approximately ten months before trial, the Defendants submitted an offer pursuant to Rule 68 "to allow judgment to be taken jointly and severally against the Defendants for the total sum, including costs now accrued and attorney's fees, of $75,000.00." (Defs.' Br. in Opp'n to Pls.' Mot. for Attorney Fees, Ex. 1). The Plaintiffs rejected this offer. The Eleventh Circuit affirmed this Court's Order in February 2008. The case was tried in August 2008. The jury reached its verdict on August 20, 2008, awarding $28,000 in damages to the Plaintiffs and no punitive damages. The Plaintiffs now move for attorney fees pursuant to 42 U.S.C. § 1988. The Plaintiffs' attorney, Clifford Hardwick, claims that his time records reflect 317.20 billable hours of work expended by his office (included in that number are 28 hours billed by his office manager). He seeks a personal hourly rate of four hundred dollars per hour and hourly rates of seventy-five dollars for his

office manager Kelly Shull's trial work and fifty dollars for her non-trial work. (Hardwick Aff. ¶¶ 18-19).

## II. Discussion

### A. Prevailing Party

The Plaintiffs are entitled to an award of attorney's fees if they are the prevailing parties. A party is not a prevailing party if it only "conceivably could benefit" from the court's judgment. Barnes v. Broward County Sheriff's Office, 190 F.3d 1274, 1278 (11th Cir. 1999). There must exist evidence that the court's judgment "materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Farrar v. Hobby, 506 U.S. 103, 111-112 (1992). Thus, a party that succeeds on the merits nonetheless is not a prevailing party for the purpose of an award of attorney's fees if it does not directly benefit from the court's order at the time it is rendered. See Hewitt v. Helms, 482 U.S. 755, 763-64 (1987) (noting that plaintiff was not prevailing party because he did not directly benefit from final judgment at the time it was entered). To be a prevailing party for purposes of attorney's fees, the plaintiff "need only prevail on one significant issue." Ruffin v. Great Dane Trailers, 969 F.2d 989, 992-93 (11th Cir. 1992). It is undisputed that the Plaintiffs are the prevailing parties in this action.

Therefore, with this threshold met, the Court now turns to the task of calculating a reasonable attorney's fees award.

B.     The Loadstar Amount

The Plaintiffs seek a total attorney's fee award of $109,585.  The Defendants oppose the motion, arguing that this Court should drastically reduce the Plaintiffs' request for attorney's fees on grounds that the Plaintiffs' counsel has submitted excessive and duplicate entries, included hours on an unsuccessful motion for partial summary judgment, failed to exercise proper billing judgment, attained a significant lack of success, and sought an excessive hourly rate. (Defs.' Br. in Opp'n to Pls.' Mot. for Attorney Fees, at 25).

In <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433-37 (1983), and <u>Blum v. Stenson</u>, 465 U.S. 886, 896-97 (1984), the Supreme Court established the framework and methodology for calculating the amount of a reasonable attorney's fee award.  The starting point for calculating a reasonable attorney's fee is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate" for the attorneys' services.  <u>Hensley</u>, 461 U.S. at 433; <u>Blum</u>, 465 U.S. at 897; <u>accord</u> <u>ACLU of Ga. v. Barnes</u>, 168 F.3d 423, 427 (11th Cir. 1999).  The determination of a reasonable hourly rate and number of compensable hours has long been aided by the factors laid out in <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714 (5th Cir.

1974). These twelve factors include: (1) the time and labor required; (2) the novelty and difficulty of the legal questions; (3) the necessary skill of the attorney; (4) the preclusion of other employment by the attorney due to the case; (5); the customary fee; (6) whether the attorney charges a fee on a fixed or contingent basis; (7) the time limitations imposed by the client or other circumstances; (8) the financial amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the attorney's professional relationship with the client; and (12) awards in like cases. Bivins v. Wrap It Up, Inc., 548 F.3d 1348, 1350 n.2 (11th Cir. 2008).

The product of the reasonable hourly rate and compensable time yields the "lodestar" amount. Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 563 (1986). The court must next consider the necessity for an adjustment based upon the results obtained. If the result was excellent, then the court should compensate for all hours reasonably expended. If the result was partial or limited success, then the lodestar must be reduced to an amount that is not excessive. Norman v. Housing Authority of City of Montgomery, 836 F.2d 1292, 1302 (11th Cir. 1988).

The fee applicant is the party that "bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." Id. at 1303; Barnes, 168

F.3d at 427; accord Coastal Fuels Marketing, Inc. v. Florida Exp. Shipping Co., Inc.,

207 F.3d 1247, 1252 (11th Cir. 2000).

> That burden includes supplying the court with specific and
> detailed evidence from which the court can determine the
> reasonable hourly rate. Further, fee counsel should have
> maintained records to show the time spent on the different
> claims, and the general subject matter of the time
> expenditures ought to be set out with sufficient particularity
> so that the district court can assess the time claimed for
> each activity. . . . A well-prepared fee petition also would
> include a summary, grouping the time entries by the nature
> of the activity or stage of the case.

Barnes, 168 F.3d at 427 (quotation marks omitted). These obligations of the fee

applicant are especially important in cases where the applicant has only partially

succeeded in the suit. Hensley, 461 U.S. at 437.

Similarly, a party opposing a fee application also has obligations. Its

objections and proof must be specific and "reasonably precise." Id. at 428. When the

parties fulfill their obligations, this assists the court in fulfilling its duty to render an

order that articulates both its decisions and reasons for the decisions, thus allowing for

meaningful appellate review. Id. at 428-29; see also Coastal Fuels, 207 F.3d at 1252

("[W]e have said that a court's order on attorney's fees must allow meaningful

appellate review."); N.A.A.C.P. v. City of Evergreen, Ala., 812 F.2d 1332, 1335 (11th

Cir. 1987) ("A prerequisite for our review of an attorney's fee award is that the district

court's opinion must have explained the reasons for the award with 'sufficient clarity to enable an appellate court to intelligently review the award.'").

1.    <u>Reasonable Hourly Rate</u>

"[T]he starting point in any determination for an objective estimate of the value of a lawyer's services is to multiply hours reasonably expended by a reasonable hourly rate." <u>Norman</u>, 836 F.2d at 1299. Reasonable hourly rates are to be measured by the "prevailing market rates in the relevant community." <u>Blum v. Stenson</u>, 465 U.S. 886, 895 (1984). Prevailing market rates are those rates that are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. <u>Id.</u> at 895 & n.11; <u>Barnes</u>, 168 F.3d at 436. The applicant attorney's customary billing rate for fee-paying clients ordinarily is the best evidence of his market rate, although that information is not necessarily conclusive. <u>Dillard v. City of Greensboro</u>, 213 F.3d 1347, 1354-55 (11th Cir. 2000) ("What [the attorney] charges clients is powerful, and perhaps the best, evidence of his market rate; that is most likely to be what he is paid as 'determined by supply and demand.'"); <u>see also</u> <u>National Ass'n of Concerned Veterans v. Secretary of Defense</u>, 675 F.2d 1319, 1325 (D.C. Cir. 1982) ("The best evidence would be the hourly rate customarily charged by the affiant himself or by his law firm."). A fee applicant also may provide opinion evidence of reasonable rates, which is commonly done by submitting

affidavits of other attorneys in the relevant legal community. <u>Duckworth v. Whisenant</u>, 97 F.3d 1393, 1396-97 (11th Cir. 1996). Finally, the court may utilize its own personal experiences and expertise to assess the lawyering skills exhibited during the pendency of the case. <u>Id.</u> at 1397 ("This court has also been given ample opportunity to assess the lawyering of this case for the Plaintiff."). But the court cannot simply substitute its own judgment for uncontradicted evidence without an explanation and record support. <u>N.A.A.C.P. v. City of Evergreen, Ala.</u>, 812 F.2d 1332, 1334-36 (11th Cir. 1987).

The Plaintiffs' evidence in support of the motion consists of Mr. Hardwick's affidavit and the attached time records. The affidavit and the time records show an hourly rate of $300 per hour through 2006 and $400 per hour after January 1, 2007. Apparently, the $109,585 sought is based upon both the $300 per hour rate and the $400 rate. The Defendants argue that both rates are excessive, and particularly object to the one-third increase in rates on January 1, 2007. Mr. Hardwick has provided no documentation whatsoever to support his claim that the hourly rates on his time sheets are reasonable. He has not submitted affidavits from other lawyers, and has not shown that he has ever had a client that paid him $300 or $400 per hour.

The Defendants' attorneys suggest an hourly rate of $250 per hour. They arrive at this figure noting that their combined rates would be $270 per hour. The $250 rate,

they point out, would exceed the Defendants' lead counsel's rate by 70%. Standing alone, the Defendants' proposed calculation is not compelling. See Norman, 836 F.2d at 1300 (defense counsel's rates "simply irrelevant to the establishment of a reasonable hourly rate for a plaintiff's civil rights lawyer" where the defense counsel "representing a governmental entity on an ongoing basis [charges] substantially lower hourly rates than would be charged for representation in a single case.").

The strongest evidence of reasonable fees is the attorney's market rate. See Dillard, 213 F.3d at 1354-55. "Satisfactory evidence at a minimum is more than the affidavit of the attorney performing the work. [The affidavit] necessarily must speak to rates actually billed and paid in similar lawsuits. Testimony that a given fee is reasonable is therefore unsatisfactory evidence of market rate." Norman, 836 F.2d at 1299 (citing Blum, 465 U.S. at 896 n.11). The Plaintiffs have failed to provide any supporting evidence here. Mr. Hardwick says that his practice consists largely in representing plaintiffs in civil rights actions. That means that he does not have a market based hourly rate that clients are regularly paying him. Therefore, the hourly rate that he includes in his time sheets is just whatever he wants to say his hourly rate will be. So, if he wants to increase his hourly rate from $300 to $400 he can easily do so. He could just as easily say that his hourly rate is $1,000. Therefore, the Court is free to rely on itself as "an expert on the question and may consider its own

knowledge and experience concerning reasonable and proper fees and may form an independent judgment." Kenny A. v. Perdue, 532 F.3d 1209, 1249 (11th Cir. 2008). A reasonable hourly rate for a civil trial attorney with Mr. Hardwick's education and experience is $300 per hour. This is based upon my personal knowledge of what Atlanta lawyers of equal or greater experience charge for their services in civil litigation.

### 2. Reasonable Hours

"Fee applicants must exercise what the Supreme Court has termed 'billing judgment.'" Barnes, 168 F.3d at 428. This means that "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary" because, for example, the case is overstaffed. Hensley, 461 U.S. at 434. As to the work performed, compensable activities include pre-litigation services in preparation of filing the lawsuit, background research and reading in complex cases, productive attorney discussions and strategy sessions, negotiations, routine activities such as making telephone calls and reading mail related to the case, monitoring and enforcing the favorable judgment, and even preparing and litigating the request for attorney's fees. See City of Riverside v. Rivera, 477 U.S. 561, 573 n.6 (1986) (allowing compensation for productive attorney discussions and strategy conferences); Webb v. Board of Educ. of Dyer

County, Tenn., 471 U.S. 234, 243 (1985) (allowing compensation for pre-litigation services in preparation of suit); Cruz v. Hauck, 762 F.2d 1230, 1233-34 (5th Cir. 1985) (allowing compensation for preparing and litigating fee request); Adams v. Mathis, 752 F.2d 553, 554 (11th Cir. 1985) (holding that measures to enforce judgment are compensable); New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1146 & n.5 (2d Cir. 1983) (allowing compensation for background research and reading in complex cases); Brewster v. Dukakis, 544 F. Supp. 1069, 1079 (D. Mass. 1982) (compensating for negotiation sessions), aff'd as modified, 786 F.2d 16, 21 (1st Cir. 1986); In re Agent Orange Product Liability Litigation, 611 F. Supp. 1296, 1321-48 (E.D.N.Y. 1985) (compensating routine activities such as telephone calls or reading mail that contribute to the litigation). Reasonable travel time of the prevailing party's attorneys ordinarily is compensated on an hourly basis, although the rate may be reduced if no legal work was performed during travel. Johnson v. University College of University of Alabama in Birmingham, 706 F.2d 1205, 1208 (11th Cir. 1983). As with attorneys' work, the hours expended by paralegals, law clerks, and other paraprofessionals are also compensable to the extent these individuals are engaged in work traditionally performed by an attorney. Missouri v. Jenkins by Agyei, 491 U.S. 274, 285 (1989); Jean v. Nelson, 863 F.2d 759, 778 (11th Cir. 1988). In short, "with the exception of

routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988" and "the standard of reasonableness is to be given a liberal interpretation." <u>N.A.A.C.P. v. City of Evergreen, Ala.</u>, 812 F.2d 1332, 1337 (11th Cir. 1987) (<u>quoting</u> <u>Dowdell v. City of Apopka, Florida</u>, 698 F.2d 1181, 1192 (11th Cir. 1983)).

The Eleventh Circuit has stated that its decisions regarding attorney's fees "contemplate a task-by-task examination of the hours billed" and that applicants should "show the time spent on the different claims." <u>Barnes</u>, 168 F.3d at 427, 429. The Eleventh Circuit has also stated that where a fee application and supporting documents are voluminous, a district court is not required to engage in an hour-by-hour analysis of the fee award. <u>Loranger v. Stierheim</u>, 10 F.3d 776, 783 (11th Cir. 1994). In such cases, it is sufficient for the district court to determine the total number of hours devoted to the litigation and then reduce that figure by an across-the-board percentage reduction if such a reduction is warranted. <u>Id.</u> The Eleventh Circuit has even intimated that such a method may be the preferred course with a voluminous fee request to avoid waste of judicial resources. <u>Id.</u> The Supreme Court has also stated:

> The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable

judgment. This discretion, however, must be exercised in
light of the considerations we have identified.

Hensley, 461 U.S. at 436-37; accord Popham v. City of Kennesaw, 820 F.2d 1570,

1581 (11th Cir. 1987) ("[T]he Supreme Court explicitly stated that a court could

simply reduce the award to account for the plaintiff's limited success instead of

eliminating hours specifically expended on unsuccessful claims.").

The Defendants ask the Court to reduce the total hours for a variety of itemized

reasons. The Defendants claim that 26.9 hours should be lopped for "irrelevant,

excessive and duplicative entries." (Defs.' Br. in Opp'n to Attorney Fees, at 6). They

seek a further reduction of 9.5 hours for work that was allegedly for another case. (Id.

at 7-8). The Plaintiffs acknowledge that three of these hours were improperly charged

to the Defendants. More, the Defendants allege that Plaintiffs' counsel billed 24.4

hours for a failed motion for partial summary judgment. (Id. at 10). Together, these

itemized hours to be excised would reduce the claimed time to 256.4 hours.

In addition, the Defendants seek a further across-the-board reduction in hours

of 10-20 percent. As a general rule, a district court should not conduct both an hour-

by-hour analysis and a further global percentage reduction in hours. Bivins, 548 F.3d

at 1351-52. This prevents an unfair double discount against reasonable hours. Id.

Most of the Defendants' objections have some validity. The Defendants complain that

the Plaintiffs' counsel hand-filed the Complaint (as opposed to e-file), did not

properly discount for travel to the Plaintiffs' home, excessively billed for clerical functions, over-billed for depositions (which was shown by time stamps), and charged his full rate to educate himself on the courtroom technology. (Defs.' Br. in Opp'n to Pls.' Br. for Attorney Fees, at 4-6). Other objections are less strong, such as complaints about duplicate entries. The Court hesitates to proclaim that two entries for the same work (though phrased slightly differently) preparing for a seminal litigation event (such as deposing a defendant) is inherently excessive. Additionally, the Plaintiffs dispute that they billed for another case for only three hours, not 9.5. At least some of the entries appear legitimate. Lastly, the Court must factor in the 10 hours the Plaintiffs' counsel claims in defending this motion [Doc. 138]. See Cruz v. Hauck, 762 F.2d 1230, 1233-34 (5th Cir. 1985) (allowing compensation for preparing and litigating fee request). Although Mr. Hardwick complains mightily, this is a self inflicted wound.

In the final analysis, the various problems with the hours submitted by Mr. Hardwick in his fee request would require the Court to entirely recreate what would be reasonable. Given the brevity of life, the Court declines to do this and will, instead, reduce the total by 20 percent. The total hours of 231 multiplied by a $300 hourly rate results in a loadstar figure of $69,300.

### 3. Rule 68 Adjustments

The Defendants argue that the fee amount should be reduced further by operation of Rule 68. Pursuant to Rule 68, a plaintiff may not recover costs incurred after a settlement offer, when the settlement offer exceeds the judgment. These potentially nonrecoverable costs include attorney fees. Pedraza v. United Guaranty Corp., 313 F.3d 1323, 1331 (11th Cir. 2002) (discussing Marek v. Chesny, 473 U.S. 1) (1985)). "The plain purpose of Rule 68 is to encourage settlement and avoid litigation." Association of Disabled Americans v. Neptune Designs, Inc., 469 F.3d 1357, 1360 n.4 (11th Cir. 2006) (citing Marek, 473 U.S. at 5). In this case, the Defendants proposed a settlement offer of $75,000, which the Plaintiffs declined.

To avoid the application of Rule 68, the Defendants maintain that "$47,000 is the magic number." (Defs.' Br. in Opp'n to Pls.' Mot. for Attorney Fees, at 24). It appears that the Plaintiffs' counsel billed 188.8 hours prior to the offer. In order to avoid further fee litigation in this case, the Court exercises its discretion not to apply the 20 percent overall reduction to these hours. Multiplied by $300 per hour, that results in $56,640 which is more than the magic number. Because the Plaintiffs' jury award and pre-offer attorney fees would exceed the Defendants' settlement offer, Rule 68's bar of post-offer costs does not apply in this case.

4. <u>Lodestar Amount Adjustments</u>

The Defendants argues that the fee request should also be reduced because they claim the Plaintiffs achieved only limited success. Specifically, the jury awarded the Plaintiffs only $28,000 of the one million dollars in compensatory damages they sought. The Plaintiffs' recovery could be characterized as limited success financially. However, the Plaintiffs did recover a substantial award and not just a nominal one. The Eleventh Circuit has signaled to district courts not to automatically drastically reduce fees even where "the ultimate net recovery of Plaintiff[s] is far below the mark of the damages sought." Duckworth, 97 F.3d at 1399. This is because some suits serve a laudable public purpose; "[n]ot all nominal damage awards produce purely pyrrhic victories." Id. Further, a plaintiff may be considered "fully successful" when "successful on all his claims and was awarded . . . damages." Bivins, 548 F.3d at 1352; see also Orchano v. Advanced Recovery, Inc., 107 F.3d 94, 100 (2d Cir. 1997) (distinguishing cases where jury awards a substantial recovery -- though perhaps substantially less than sought -- from cases with only nominal damage awards). An additional downward adjustment to the lodestar (after a previous downward adjustment to the lodestar factors) is not appropriate here due to the Plaintiffs' limited success. Bivins, 548 F.3d at 1352. The Plaintiffs are also entitled to fees based upon counsel's assistant. These fees total $1575, reflecting 28 hours of undisputed work.

## IV.  Conclusion

For the reasons set forth above, the Plaintiffs' Motions for Attorney Fees [Doc. 128, 138] are GRANTED in the reduced amount of $70,875.

SO ORDERED, this 2 day of July, 2009.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge